IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION<br>NO. 09-474 |
| JOSEPH CAPPARELLA, | |
| Defendant. | |

**OPINION**

**Slomsky, J.**                                                                                                       **April 21, 2023**

**I. INTRODUCTION**

Defendant Joseph Capparella, proceeding pro se, is currently serving a 240-month sentence and moves for reduction of his sentence pursuant to 18 U.S.C. 3582(c)(1)(A), which is known as the Compassionate Release Statute. (Doc. No. 535.) Defendant requests a reduced sentence based on his medical conditions consisting of hypertension, high cholesterol, esophageal reflux, depression, anxiety, and blood clots in his left leg. (Id. at 1.) He also argues that changes in the United States Sentencing Guidelines, which were amended by the First Step Act of 2018,[1] warrant compassionate release. (Id.)

---

[1] The First Step Act of 2018, in part, reduced the mandatory minimum prison terms for certain repeat drug offenses involving high-level drug quantities. "It reduces the mandatory minimum sentence from 20 to 15 years for a high-level offense after one prior conviction. . . . Additionally, the mandatory minimum penalty applies if the prior convictions are for a serious drug felony or serious violent felony." First Step Act of 2018, Pub. Act 115-391, § 401 (2018).

1

The Government opposes Defendant's Motion, citing the danger he presents to the community, the remaining time on his sentence, and the factors under 18 U.S.C. § 3553(a). (Doc. No. 537.) The Government further argues that because Defendant has been vaccinated for COVID-19 and his medical conditions have been properly managed, he does not have extraordinary and compelling reasons for an early release. (Id. at 1, 5.)

For reasons that follow, Defendant's Motion (Doc. No. 535) will be denied.

## II. BACKGROUND

### A. Defendant's Criminal History

From January 2007 to September 7, 2007, Defendant and a co-defendant sold cocaine for the Caraballo Drug Trafficking Organization ("Caraballo DTO") from the Bella Rosa II bar where Defendant worked. (Doc. No. 1 at 3.) The bar was one of the primary distribution centers for the Caraballo DTO where Defendant either personally sold cocaine or delegated to others to sell the cocaine. (Doc. No. 537 at 2.)

The case against the Carabello DTO resulted from an undercover investigation of drug trafficking in Philadelphia led by the Pennsylvania Attorney General's Office. (Id.) Confidential informants ("CI's") made controlled purchases of cocaine from members of the Carabello DTO on numerous occasions between 2005 and September 7, 2007. (Id.) On July 25, 2007, a CI made a controlled purchase of three ounces of cocaine – 95.9 grams – from Defendant at the bar. (Id.)

Defendant also stored for distribution cocaine at his residence, located at 937 Watkins Street, Philadelphia, Pennsylvania, for the Caraballo DTO. (Id.) On September 7, 2007, agents executed a search warrant for Defendant's home and recovered 108 individual packets of cocaine, collectively weighing approximately 60.8 grams. (Id. at 2-3.)

Defendant was indicted and charged with, inter alia, conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (Id. at 1.) He also was charged with distribution of cocaine, and with possession of cocaine with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1),(b)(1)(C). (Id. at 1-2.) On December 15, 2009, Defendant pled guilty to all three charges. (Id. at 2.) On December 28, 2010, he received the mandatory minimum sentence for each of the offenses for a total of 240-months of imprisonment, followed by ten years of supervised release. (Doc. No. 262 at 2.) He was also assessed a $5,000 fine and a $300 special assessment. (Id. at 5.) Defendant is serving his sentence at a Federal Correctional Institution ("FCI") in Ashland, Kentucky. (Doc. No. 537 at 4.)

**B. Defendant's Pro Se Motion for Reduction in Sentence**

On April 25, 2022, Defendant filed the instant pro se Motion for Reduction in Sentence Pursuant to 18 U.S.C. 3582(c)(1)(A). (Doc. No. 535.) He seeks to have his sentence reduced from 240 months to 180 months, which would make his release date November 25, 2025, instead of March 25, 2028. (Id. at 2.) He claims that the reduction would make him eligible for release to a halfway house this year. (Id.) At the time Defendant filed his Motion, he had served eleven years, or sixty-five percent of his sentence. (Id.)

In his Motion, Defendant states that he suffers from hypertension, high cholesterol, esophageal reflux, depression, anxiety, and blood clots in his left leg. (Id. at 1.) He also states he is on an aspirin regimen and takes medication for his anxiety and depression. (Id.) Further, Defendant relies upon provisions of the First Step Act of 2018 that reduce mandatory minimums related to high-quantity drug offenses from 240 months to 180 months. (Id. at 2.) Defendant acknowledges that Congress did not intend for the First Step Act of 2018 to be applied retroactively. (Id.) However, he asks the Court to exercise its discretion under 18 U.S.C. §

3

3582(c)(1)(A) to reduce his sentence "in light of the disparity between sentences imposed prior to FSA [(the First Step Act)] and those imposed after FSA." (Id.)

Furthermore, Defendant points to his low risk of recidivism as illustrated by his PATTERN Risk Assessment score[2]. (Id.) Additionally, Defendant has taken responsibility for the disciplinary infractions he received throughout his sentence by taking classes on "coping mechanisms, anger management and critical thinking." (Id.) And he has submitted requests to the Bureau of Prisons ("BOP") for additional anti-recidivism classes, including courses on education and psychology. (Id.) The FCI, however, has been unable to fulfill his requests due to the COVID-19 pandemic. (Id.)

Moreover, Defendant notes that he has a release plan including adequate housing, employment opportunities, and access to reliable transportation. (Id. at 3.) He asserts that he will work full-time, comply with medical and mental health appointments, and adhere to the terms of his release. (Id.) Defendant emphasizes his desire to build a new life as a productive member of society by paying taxes and performing community service. (Id.)

**C. The Government's Response in Opposition to Defendant's Motion**

On May 17, 2022, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 537.) In its Response, the Government argues that Defendant's Motion should be denied because of Defendant's COVID-19 vaccination status, the management of his medical conditions,

---

[2] PATTERN stands for "Prisoner Assessment Tool Targeting Estimated Risk and Needs." The PATTERN Risk Assessment is a tool used by the Bureau of Prisons to measure an inmate's rehabilitation during incarceration. The tool helps create opportunities for inmates to reduce their risk scores during periodic reassessments. The assessment evaluates an inmate's history of violence, history of escapes, and incident reports among other risk factors. It also weighs enrollment in educational courses and work programs. A low score suggests a low probability that a prisoner would reoffend upon release.

the danger Defendant presents to the community, the time remaining on his sentence, and the factors under 18 U.S.C. § 3553(a).  (Id. at 1.)

Regarding Defendant's medical conditions, the Government notes that he has not taken blood thinning medicine for his blood clots since 2011.  (Id. at 4-5.)  The Government also notes that "all of his existing conditions appear well-controlled at this time with medication provided by the institution.  [Defendant] is fully ambulatory and engages in all normal activities of daily living."  (Id. at 5.)  Further, the Government argues that Defendant's conditions are neither terminal nor life-threatening.  (Id. at 13.)  Additionally, it claims Defendant is able to provide "self-care" at the correctional facility.  (Id.)

While Defendant does not explicitly rely on COVID-19 as a reason for an early release, the Government highlights his COVID-19 vaccination status, which includes his receipt of two Moderna vaccine doses and one Pfizer booster.  (Id. at 5, 13.)  The Government emphasizes the work of the BOP in acting "aggressively to mitigate the spread of COVID-19 and to treat those who are afflicted."  (Id. at 5.)  The BOP has offered the vaccine to every inmate and staff member and continues to "employ proven infection prevention procedures and modifications to inmate programming services commensurate to the conditions at each facility."  (Id.)

Regarding the § 18 U.S.C. 3553(a) factors, the Government submits that Defendant continues to present a danger to the community and should be required to serve the sentence that this Court originally imposed for his criminal conduct.  (Id. at 18.)  "Capparella was a significant member of a large drug distribution organization that distributed approximately fifteen kilograms of cocaine," some of which he stored in his house.  (Id.)  "There is no doubt that, at the time of his offense, Capparella was engaged in prohibited conduct that presented a significant danger to the community."  (Id.)  Further, the Government contends that Defendant's 240-month sentence

reflects the seriousness of his offense, promotes respect for the law, and provides just punishment for the offense. (Id.)

On May 31, 2022, Defendant filed a Reply to the Government's Response to his Motion. (Doc. No. 540.) In his Reply, Defendant asks this Court to remember the discretion it has when considering the definition of "extraordinary and compelling" pursuant to U.S.S.G. § 1B1.13, n.1, which Defendant argues is supported by Third Circuit precedent. (Id. at 1-2.) Defendant further underscores that he is only asking for a sentence reduction, not an immediate release. (Id. at 3.). Defendant further contends that a 180-month sentence would reflect the seriousness of his offenses, promote respect for the law, and provide just punishment. (Id.) Defendant is "mindful that he does not deserve any second chances," but would "not waste the opportunity" if he were granted a sentence reduction.[3] (Id. at 4.)

### III. DISCUSSION

#### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality." Freeman v. United States, 564 U.S. 522, 526 (2011). The compassionate release statute, drawn from 18 U.S.C. § 3582(c)(1)(A) is such an exception. The statute empowers a

---

[3] On January 1, 2023, Defendant filed a "Motion to Consider," in which he urges this Court to review the Attorney General's Memorandum issued on December 16, 2022 regarding sentencing, plea agreements, mandatory minimum offenses, and recidivist enhancements related to drug offenses. (Doc. No. 546.) This Motion will be granted. The content of the Memorandum, however, does not change the result in this case. In any event, the Memorandum does not create an enforceable substantive or procedural right or benefit. In his Motion to Consider, Defendant also argues that his sentence should be reduced because two of his co-defendants have received reduced sentences. (Id.) However, without more, this argument does not warrant a reduction of his sentence.

district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[4]  The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; …
>
> …and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission.  Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under Section 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

---

[4]  A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A).  In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020).  Defendant has complied with these time requirements and therefore his Motion for Compassionate Release has been filed timely.  See infra n.6.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. Id. n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia;
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or mental condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging processthat substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family circumstances.
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

Id. § 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[5] Id. § 1B1.13 n.1(D).

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under Section 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395.

The second step in evaluating a request for a sentence reduction requires the court to determine whether "extraordinary and compelling reasons warrant the reduction; . . . and that such reduction is consistent with policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Additionally, the court must determine whether the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g), which lists for consideration:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-

---

[5] Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;
>
> and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;
>
> and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

It is important to note, however, that while reduction must be consistent with Sentencing Guideline §1B1.13, only motions from the BOP Director are bound to the guidelines, not motions from defendants. While the policy is not binding for district courts to follow, it is still instructive.

> [A]lthough the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons. "It is a commonplace of statutory interpretation that 'Congress legislates against the backdrop of existing law.'" Because Congress reenacted the compassionate-release statute without any alterations to the phrase "extraordinary and compelling reasons," it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute.

United States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021) (citations omitted).

The Sixth Circuit reached a similar conclusion. "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020).

As previously mentioned, the court may initiate an "extraordinary and compelling" analysis if the defendant has first exhausted administrative rights to appeal . . . [and] the lapse of thirty days from the receipt of such a request by the Warden of the Defendant's facility. 18 U.S.C.

10

§ 3582(c)(1)(A). Here, Defendant has exhausted the administrative requirements.[6] Considering this exhaustion, the court must first consider factors set forth in Section 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

### B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion will be denied because neither his medical conditions nor his reliance on the First Step Act's mandatory minimum sentencing guidelines for drug-related offenses present an extraordinary and compelling reason for compassionate release. Further, the relevant Section 3553(a) factors weigh against a reduction or modification of his sentence. Each of these conclusions will be discussed below.

#### 1. Defendant Has Not Shown an Extraordinary and Compelling Reason for His Release

Defendant does not present an extraordinary and compelling reason for an early release that would outweigh the nature of his offenses or the appropriate sentence he received as a result

---

[6] More than thirty days passed since the Warden of FCI Ashland received Defendant's request for compassionate release, satisfying the administrative exhaustion requirement. (Doc. No. 537 at 4.) On January 27, 2022, Defendant submitted a request for compassionate release to the Warden. On February 9, 2022, the Warden denied his request. (Id.) On April 26, 2022, Defendant filed the Motion for Reduction of Sentence with this Court.

of his crimes. The reasons Defendant asserts – high blood pressure, high cholesterol, esophageal reflux, blood clots, depression, anxiety, and the First Step Act of 2018 – do not rise to the level of "extraordinary and compelling" as recognized by precedent. Therefore, Defendant's Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) will be denied.

Defendant's numerous medical conditions – high blood pressure, high cholesterol, esophageal reflux, blood clots, depression, and anxiety – are not extraordinary and compelling reasons to reduce his sentence. This finding is supported by decisions of other District Courts.[7] In addition, five of Defendant's conditions – high blood pressure, high cholesterol, esophageal reflux, depression, and anxiety – are managed by medication. (Doc. 535 at 10.) Moreover, Defendant's deep vein thrombosis (blood clotting) was categorized as "resolved" on May 7, 2019 by Health Services of FCI Ashland. (Id. at 13.)

In United States v. Moldover, the court held that Defendant's depression, anxiety disorder, hyperlipidemia, and nerve damage did "not present extraordinary and compelling reasons justifying his release" and further noted that "all four conditions appear to be under control." Moldover, 2020 WL 6731111, at *10 (E.D. Pa. Nov. 13, 2020). The same is true here. Defendant's medical conditions are either managed with medication or have been resolved.

---

[7] See United States v. Milchin, No. 17-00284-1, 2020 WL 4475902, at *1 (E.D. Pa. Aug. 4, 2020) (finding Defendant's obesity and high cholesterol do not present an extraordinary and compelling reason for his release.); United States v. Sutton, No. 20-276, 2022 WL 3018190, at *3 (E.D. Pa. July 28, 2022) (finding obesity, diabetes, high blood pressure, high cholesterol, and asthma do not constitute an extraordinary and compelling reason for compassionate release); United States v. Morales, No. 16-370-1, 2022 WL 3970648, at *2 (E.D. Pa. Aug. 31, 2022) (concluding that an increased risk of illness to COVID-19 due to Defendant's high blood pressure, high cholesterol, and heart issues was not an extraordinary and compelling reason for early release.); United States v. Rodriguez, No. 15-566, 2022 WL 3371316, at *5 (E.D. Pa. Aug. 16, 2022) (finding that the COVID-19 vaccination weighed heavily against the Defendant who feared his hypertension and high cholesterol would threaten his life if he contracted the coronavirus.)

Therefore, Defendant's medical conditions do not present an extraordinary and compelling reason for a sentence reduction.

In support of his Motion, Defendant cites changes to mandatory minimum sentences for drug offenses involving high quantities of drugs enacted by the First Step Act of 2018. However, Congress provided that these changes do not apply retroactively.[8]  For a court not to follow this directive would infringe on the legislature's constitutional authority to set sentencing guidelines.

> [I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced. What the Supreme Court views as the "ordinary practice" cannot also be an "extraordinary and compelling reason" to deviate from that practice. . . . [W]e will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release. Such an interpretation would sow conflict within the statute.

Andrews, 12 F.4th at 261-62 (citations omitted).

Therefore, a sentence reduction solely based on an adjustment in statutory guidelines would be imprudent.

### 2. The Section 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

---

[8]  The First Step Act of 2018 states, in part:

> No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 – which reduced cocaine sentencing disparity and eliminated the mandatory minimum sentence for simple possession found in the Controlled Substances Act, 21 U.S.C. § 844(a) – or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-391, § 756, 132 Stat. 5194, 5222.

The relevant Section 3553(a) factors also militate against granting Defendant compassionate release. First, Defendant presents a danger to his community due to the nature and circumstances of his offense. Defendant played a significant role in a drug distribution organization that was responsible for circulating approximately fifteen kilograms of cocaine into the community. (Doc. No. 537 at 18.) Additionally, the original sentence imposed took into account the seriousness of the offense and the need to promote respect for the law, to afford adequate deterrence to criminal conduct, specifically cocaine distribution, and to protect the public from further crimes by Defendant. (Id.) This conclusion is consistent with Third Circuit precedent:

> [B]ecause a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020).

And while Defendant has submitted requests to take education, psychology, and other anti-recidivism courses at FCI Ashland, he has not yet taken them because he claims the effects of the COVID-19 pandemic have impeded the institution's educational resource expansion. (Doc. No. 535 at 2-3.) But his desire to take the additional courses, while commendable, does not warrant compassionate release. In United States v. Sanders, the defendant argued that inadequate educational and vocational training at FCI Cumberland due to the COVID-19 pandemic weighed in favor of compassionate release. See United States v. Sanders, 2022 WL 1104967, at *2 (D.N.J. Apr. 13, 2022). There, the Court noted that the multiple courses defendant had already completed during the height of the pandemic weighed against his argument. (Id. at *7.)

> "[T]he fact that he has taken some courses demonstrates that even with the availability issues that the BOP has faced due to COVID-19, there have been

14

opportunities for Defendant to participate in classes and programs. While any temporary unavailability may have caused some hardship to Defendant, similar hardships have been experienced throughout society and do not present an extraordinary or compelling basis for compassionate release.

Id.

The same is true here. Defendant already has taken courses on coping mechanisms, anger management, and critical thinking. (Doc. No. 535 at 2.) This demonstrates that FCI Ashland has educational and vocational opportunities available. It further illustrates that COVID-19-related obstacles in providing additional courses are not unique to FCI Ashland. Therefore, the claim that there are inadequate educational and vocational opportunities at FCI Ashland is not an extraordinary and compelling reason for a reduced sentence.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Reduction in Sentence Pursuant to 18 U.S.C. 3582(c)(a)(A) will be denied. An appropriate Order follows.